UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| MOHAMED ALSHEREF,<br><br>    Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>    Respondents. | No. 1:25-CV-190-H |

### ORDER

Mohamed Alsheref is in ICE custody to enforce an indisputably valid order of removal issued against him in 2008 after he was convicted of possession of over 180 kilograms of marijuana with intent to distribute. Upon being re-detained in 2025 after a failed 2008 removal, he seeks habeas relief. In support, Alsheref raises three claims: that the respondents (1) failed to provide the notice, interview, and opportunity to respond as required by law; (2) violated the Due Process Clause and the INA by detaining him without a significant likelihood of removal in the foreseeable future; and (3) detained him without an opportunity to present a fear-based claim against removal to Israel.

Even assuming ICE violated the INA's procedures, any such error was harmless. Because the respondents have shown a significant likelihood of Alsheref's removal in the reasonably foreseeable future—namely, by showing Israel's change in policy of accepting persons of Palestinian descent and the availability of removal to other third countries—the respondents have not violated the Due Process Clause or the INA. To the extent Alsheref seeks withholding of removal or relief under the Convention Against Torture, his remaining claim belongs in the District of Massachusetts. *See D.V.D. v. DHS*, 1:25-CV-10676.

Accordingly, as detailed below, the Court denies Alsheref's habeas petition and complaint for declaratory and injunctive relief (Dkt. No. 1). Because Alsheref's motion for a temporary restraining order and preliminary injunction (Dkt. No. 3) has been withdrawn (*see* Dkt. No. 20 at 11), the Court denies that motion as moot.

1.   **Factual and Procedural Background**

    A.   **Factual Allegations and Evidence**

Mohamed Alsheref is a stateless man of Palestinian descent. Dkt. No. 1 at 4. He was born in Libya in 1981 to parents of Palestinian descent and entered the United States on a student visa in the 1990s. *Id.* Years later, in 2006, a federal court in Corpus Christi sentenced Alsheref to 32 months' imprisonment for conspiracy to possess with intent to distribute 183.3 kilograms of marijuana. Dkt. No. 19 at 6–7. Upon his release from custody in 2008, an Immigration Judge ordered Alsheref removed to Libya or else to a third country as permitted by law. *Id.* at 15. The government was unable to remove Alsheref to Libya, so it tried—and failed—to remove him to Egypt, Jordan, and Israel. *Id.* at 17. As a result, ICE released Alsheref on an order of supervision. *Id.* Alsheref remained on the order of supervision for 17 years until his detention on July 26, 2025. Dkt. No. 1 at 6. Alsheref is currently detained at the Bluebonnet Detention Facility and has remained in custody since his detention. *See* Dkt. No. 1 at 4.

Beginning in 2025, the United States "initiated a policy of deporting individuals of Palestinian descent to Israel." Dkt. No. 1 at 9. Alsheref asserts that the government of Israel is engaged in "the systematic and institutionalized persecution of Palestinians" through the means of "arbitrary killings, the use of administrative detention without charge or trial . . . and credible allegations of torture and other cruel, inhumane, or degrading

treatment in detention facilities." Dkt. No. 3 at 10; *see* Dkt. No. 1 at 9–10.  The only evidence attached to Alsheref's habeas petition is one exhibit, a translated copy of his Libyan birth certificate.  Dkt. No. 1-2.

In turn, the respondents have provided multiple documents in their appendix.  Dkt. No. 19.  These include documents relating to Alsheref's criminal conviction, *id.* at 4–11, documents relating to the 2008 removal attempt, including the removal order, *id.* at 12–15, and the declarations of two ICE agents who describe Alsheref's detention, the past deportation attempt, and ICE's current efforts to remove Alsheref, *id.* at 16–20.

    **B.**    **Procedural Background**

On September 22, 2025, Alsheref filed his combined petition for a writ of habeas corpus and complaint for declaratory and injunctive relief in the Dallas Division of the Northern District of Texas.  Dkt. No. 1.  The following day, September 23, Magistrate Judge Renee Harris Toliver ordered the case transferred to this Court.  Dkt. No. 8.  The Court then ordered the respondents to show cause why Alsheref's writ should not be granted and to respond to his motion for a preliminary injunction.  Dkt. No. 10.  The respondents filed their response with an appendix attached on October 13, 2025.  Dkt. Nos. 18; 19.  Alsheref filed his reply brief on October 21, 2025.  Dkt. No. 20.  The petition is now ripe for review.

**2.**    **Legal Standards**

    **A.**    **Orders of Removal**

Ordinarily, the government must remove an alien ordered removed within 90 days of a final order of removal.  8 U.S.C. § 1231(a)(1)(A).  If an alien is not removed within this period, the alien is subject to supervision.  *Id.* § 1231(a)(3).  Supreme Court precedent clarifies these statutory provisions.  In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme

Court interpreted 8 U.S.C. § 1231(a)(6) to determine how long the government may detain an alien pending removal under this section. *Id.* at 682. The Court first determined that challenges to detainment under this provision are available under 28 U.S.C. § 2241, which is the basis of Alsheref's habeas petition. *See id.* at 688; Dkt. No. 1 at 3–4. Turning to the merits, the Supreme Court concluded that the government may not detain indefinitely aliens under this provision. *Zadvydas*, 533 U.S. at 699. Rather, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* Courts facing these questions "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.*

A court measures reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* Courts must also "take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

Moreover, "to limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien has the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. After meeting this burden, the burden shifts to

the government to provide evidence to rebut the alien's showing. *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Federal regulations govern the issues in this habeas petition as well. 8 C.F.R. § 241.4(l)(2)(iii) gives the government discretion to end an order of supervision "to enforce a removal order." Whether changed circumstances have arisen to permit removal are governed by 8 C.F.R. § 241.13. *See* § 241.4(b)(4). Section 241.13(a) "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." Section 241.13(i)(2) of this regulation provides that "[ICE] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

### B.   Third-Country Removal

When the government seeks to remove an alien, it ordinarily commences removal proceedings, which require an evidentiary hearing before an IJ. 8 U.S.C. § 1229a. Removal proceedings determine both an alien's removability and his ultimate destination. By default, an alien is entitled to select one country "to which the alien wants to be removed." 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). But if the alien does not select a country, the IJ will designate the country of removal and, if appropriate, alternative countries. 8 C.F.R. § 1240.10(f).

Federal law also provides aliens with certain protections—some discretionary, others mandatory—such as asylum, withholding of removal, and the Convention Against Torture (CAT). 8 C.F.R. § 1240.11(c)(1). Where an IJ finds that an alien is likely to be persecuted or tortured, that alien is entitled to mandatory protection through withholding of removal or the CAT, respectively. *See Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("These forms of relief require the noncitizen to show a greater likelihood of persecution or torture at home than is necessary for asylum, but the Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility."). But withholding of removal and CAT protection are relevant only to the removable alien's destination; they are not wholesale protections against removal.

Thus, circumstances may arise where the government can still remove an alien to a "country whose government will accept the alien," even though that country was not authorized by an IJ. 8 U.S.C. § 1231(b)(2)(E)(vii). Such removals are called "third-country removals." Federal law prohibits third-country removals if "the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Likewise, the Foreign Affairs Reform and Restructuring Act of 1998, by codifying CAT protections, prevents aliens from being removed to any country where they would face torture. *See* 28 C.F.R. § 200.1; 8 C.F.R. §§ 208.16–18, 1208.16–18. In view of these protections against third-country removal, the question of what procedures the Constitution requires has been a topic of ongoing controversy. *See, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670 (2025); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025).

### C. *D.V.D. v. DHS*

In February 2025, ICE issued a directive (the February Directive) instructing its officers to review for removal all cases on the non-detained docket and determine the viability of third-country removal. *Nasrabadi v. Villegas*, No. 1:25-CV-129, Dkt. No. 16 at 5 (N.D. Tex. Oct. 28, 2025). The following month, DHS issued an updated guidance (the March Guidance) on third-country removals. *Id.* The March Guidance memorandum dictates that, if the third country has "provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured" and the Department of State deems those assurances credible, an alien "may be removed without the need for further procedures." *Id.* (quotation omitted). In the event an alien "affirmatively states a fear," USCIS will conduct a screening within 24 hours of the referral and determine whether the alien "would more likely than not be persecuted on a statutorily protected ground or tortured" if removed to the third country. *Id.* (quotation omitted). If the United States Citizenship and Immigration Services "determines that the alien has not met this standard, the alien will be removed." *Id.*

In April 2025, the District of Massachusetts certified an injunctive or declaratory (and thus non-opt-out) class under Federal Rule of Civil Procedure 23(b)(2) challenging these new third-country removal procedures. *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 385–86 (D. Mass. 2025). That court also issued a preliminary injunction ordering the government not to remove any class members to a third country without complying with specified procedures. *Id.* at 392–93. The court defined the non-opt-out class as

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a

>  country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at 378.

In June 2025, the Supreme Court, while leaving the certified class intact, stayed the *D.V.D.* preliminary injunction pending the appeal before the United States Court of Appeals for the First Circuit. *DHS v. D.V.D.*, 145 S. Ct. 2153 (2025). The class members' claims remain pending in the District of Massachusetts, and the preliminary-injunction appeal remains pending in the First Circuit. *See* 1:25-CV-10676, Dkt. Nos. 180; 217.

3.   Analysis

   A.   **Even assuming that the respondents did not follow the procedural requirements of 8 C.F.R. §§ 241.4(l) and 241.13(i)(3), Alsheref would not be entitled to habeas relief because any error was harmless.**

Alsheref contends that the respondents have failed to follow the INA and its implementing regulations by failing to provide Alsheref with an "individualized determination of changed circumstances that render his removal from the United States significantly likely in the reasonably foreseeable future," as well as failing to "provid[e] notice of the reasons for re-detention or an opportunity to be heard." *See* Dkt. No. 1 at 16.[1] Alsheref alleges that ICE did not provide a reason for his detention, expressed confusion and uncertainty about his removal, and "affirmatively disclaimed any actual changed circumstances that could have justified his re-detention." *Id.* at 6–7. The respondents'

---

[1] Alsheref also contends that ICE detained him "without determining that changed circumstances render his removal significantly likely in the reasonably foreseeable future." Dkt. No. 1 at 13–14. That contention is addressed *infra* Analysis § 3(B).

briefing and evidence does not respond to Alsheref's assertions about the procedural requirements at the time of his arrest in July 2025. *See* Dkt. Nos. 18 at 7–8; 19 at 16–20.

For purpose of this analysis, the Court assumes that the respondents have yet[2] to follow the procedural requirements of sections 241.4(l) and 241.13(i)(3). Harmless error applies in immigration cases generally. *Rangel-Betancourt v. Barr*, 820 F. App'x 253, 255 (5th Cir. 2020) (citing *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010)); *Jalloh v. Garland*, No. 202117, 2023 WL 1859918, at *2 (4th Cir. Feb. 9, 2023) (citing *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004)) (further citation omitted). The same is true for an agency's procedural violations. *See City of Arlington v. FCC*, 668 F.3d 229, 243–44 (5th Cir. 2012). Under a harmless-error analysis, the party asserting error bears the burden of demonstrating prejudice. *Id.* at 243.

The facts here are materially similar to a recent decision of this Court, *Nguyen v. Noem*, ___ F. Supp. 3d ___, No. 6:25-CV-057, 2025 WL 2737803 (N.D. Tex. Aug. 10, 2025). There, the petitioner challenged his detention process as a violation of section 241.13(i)(3), which governs revocation of an order of supervision for removal. Section 241.13(i)(3) requires "notice, an informal interview, and a limited opportunity to respond and present information regarding the changed circumstances." *Id.* at *5. Here, as in that case, Alsheref has had the opportunity to obtain counsel, to make a full argument to a federal court regarding his detention, submit evidence, respond to the respondents' arguments, and benefit from the Court's orders asking for more information and promises

---

[2] The Court notes that there is no particular timeline in which these procedures must happen. The procedures all take place after the alien is detained, so they are not precursors to detention. *See* 8 C.F.R. § 241.13(i)(3) (providing that these procedures arise "promptly after [an alien's] return to [ICE] custody").

from the respondents. *See* Dkt. Nos. 1–2; 13–14; 17–22. As a result, Alsheref "has clearly been given notice because the respondents have fully explained through briefing and declarations the basis for their conclusion." *Nguyen*, 2025 WL 2737803, at *5; *see also Surovtsev v. Noem*, No. 1:25-CV-160, Dkt. No. 24 at 7–8 (N.D. Tex. Oct. 31, 2025) (same). Because Alsheref has received more than a full notice and an opportunity to be heard, even if the respondents failed to conform to the regulations set forth in section 241.4(l)(1), any error is now harmless in light of the procedures in this case. There is no basis, on these grounds, for ordering Alsheref's immediate release. Moreover, because habeas is not backward-looking, the process provided now renders forward-looking relief separately inappropriate. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of the prisoner's current detention."); *Lane v. Williams*, 455 U.S. 624, 631 (1982) (explaining that where detainment or its consequences have expired, a habeas petition is moot); *Nguyen*, 2025 WL 2737803, at *10 (same).

> **B.   Because circumstances have changed and there is now a significant likelihood that Alsheref may be removed to Israel or another country in the reasonably foreseeable future, the respondents did not violate 8 C.F.R. § 241.4(l), § 241.13(i)(2), or the Fifth Amendment.**

Alsheref contends that the respondents violated sections 241.4(l) and 241.13(i)(2), as well as the Due Process Clause of the Fifth Amendment, when they re-detained him in the absence of changed circumstances. *See* Dkt. Nos. 1 at 11–16; 3 at 11–14. Because both the regulatory and constitutional violations turn on the same question of law, the Court addresses them together and concludes that changed circumstances justify Alsheref's detention, so there is no violation of section 241.4(l), section 241.13(i)(2), or the Fifth Amendment under the standards generally applicable under *Zadvydas*.

"But before turning to the merits of this discussion, the [c]ourt must consider the appropriate standards." *Nguyen*, 2025 WL 2737803, at *7. The operative language is that ICE "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). "This regulation gives the decision-making power primarily to ICE and not to this Court," such that the Court's review "is necessarily limited." *Nguyen*, 2025 WL 2737803, at *8. To prevail, the government need only establish "a significant likelihood that removal in the reasonably foreseeable future may occur," rather than "be certain or immediate." *Id.* (citing 8 C.F.R. § 241.13(i)(2)).

"The facts in this case, both particular and general, undermine [Alsheref's] argument." *Surovtsev*, Dkt. No. 24 at 10. In 2008, the United States made multiple attempts to remove Alsheref to his listed country of removal—Libya—and to three unlisted alternative countries, including Israel. Dkt. No. 19 at 17. Israel refused to issue travel documents. *Id.* Then, as now, Israel and Palestinian factions have remained in a protracted feud. Alsheref also asserts that, at least as of 2023, "Israel affirmatively [did] not allow diaspora Palestinians to live in the West Bank." Dkt. No. 20 at 7 (citation omitted).

But Alsheref concedes that the United States "has initiated a policy of deporting individuals of Palestinian descent to Israel." Dkt. Nos. 1 at 9; 3 at 7. And an American diplomatic attaché confirms the policy. Dkt. No. 19 at 20. Those deportations include at least one case where the detainee was, like Alsheref, an individual born to Palestinian parents outside of Gaza, the West Bank, or Israel. *Id.* These are significant developments that indicate a significant likelihood of removal in the reasonably foreseeable future.

Alsheref's three lines of rebuttal are plainly unpersuasive. First, he urges that—despite these facts—there is no "evidence that [deportations] are more available now than they have been previously." Dkt. No. 20 at 6. But plainly his own admission that the United States is now deporting persons of Palestinian descent to Israel is evidence of changed circumstances. So, too, is the Petitioner's own evidence that Israel is transporting individuals to the West Bank, despite an earlier prohibition. This evidence persuasively shows that the United States government is removing individuals to Israel or to Gaza or the West Bank through Israel, that numerous individuals have already been deported in this manner, and that at least one individual whose situation is analogous to Alsheref's has been removed to Israel. These facts are enough to establish a significant likelihood that Alsheref may be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(2).

The Court also notes that, "as of 2025, ICE now actively pursues third-country removals, granting the agency expanded options" on the detainee's ultimate country of removal. *Surovtsev*, No. 1:25-CV-160, Dkt. No. 23 at 11 (internal quotation marks omitted). In the past, it appears ICE attempted to remove Alsheref to the third countries of Egypt, Jordan, and Israel alone because those were the countries historically associated with ports of entry into Gaza and the West Bank. *See* Dkt. No. 20 at 5. But even Alsheref acknowledges the possibility that the respondents will seek to remove him to any number of other countries. *See* Dkt. No. 1 at 7 (noting the potential of removal to a country in Africa). The likelihood of Alsheref's deportation to Israel, combined with the alternative possibility of being removed to another third country, creates a substantial likelihood of removal in the reasonably foreseeable future. *See Surovtsev*, No. 1:25-CV-160, Dkt. No. 23 at 12–13.

Second, Alsheref cites a recent decision from the Southern District of Texas, *Abuelhawa v. Noem*, No. 4:25-CV-4128, 2025 WL 2937692 (S.D. Tex. Oct. 16, 2025). There, the Court found no significant likelihood of removal for a detainee of Palestinian descent. In particular, the Court observed that the petitioner "plainly [made] a sufficient showing of his prima facie case," since "neither Jordan, nor Israel, nor Palestine agreed or was able to receive" the petitioner in the past, because the petitioner "annually made request of Israel for return or travel documents . . . to no avail," because Jordan's government policy had not changed, and because the strife of the Israel-Hamas conflict in Gaza was still underway. 2025 WL 2937692, at *8 (emphasis deleted). The Court also observed that "the Government [had not] provided any evidence that the identified, potential receiving nations or territories (Israel, Jordan, Gaza, or the West Bank) ha[d] accepted a single Palestinian detainee at any recent time." *Id.* at *10.

The facts here are readily distinguishable. Though the *Abuelhawa* decision was recent, the petitioner's success there is merely a reminder that party presentation matters. The respondents in that case failed to offer proof of the new policy of removal—much less did the Court have the petitioner's concession that such a policy existed. The respondents also failed to offer evidence of examples of removal. But this Court, in contrast, has evidence of the new policy, and it has proof from both sides that deportations of persons of Palestinian descent in the United States to Israel or to Gaza or the West Bank through Israel have taken place. That this policy is underway even as the stakeholders in the Gaza conflict seek peace is further proof that circumstances have indeed changed.

Finally, the Court rejects as irrelevant Alsheref's arguments about the respondents' lack of changed circumstances at the time of his original detention. *See* Dkt. Nos. 1 at 14 –

15; 3 at 13–14. "In determining whether [the petitioner] is entitled to be released, the Court must determine whether his detention *now* is in violation of the regulation or the constitution." *Nguyen*, 2025 WL 2737803, at *10 (emphasis added); *see also Surovtsev*, Dkt. No. 23 at 15 (declining to treat past failures to remove under ICE's former third-country removal policy as persuasive). Because "the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention," the Court may deny the petition, if, under present circumstances, Alsheref's confinement is justified. *Walker v. Wainright*, 390 U.S. 335, 336 (1968). Because his detention is presently justified, the Court denies Alsheref's claim that the respondents have violated the INA and the Fifth Amendment.

### C.   Alsheref's fear-of-harm claim belongs in the *D.V.D.* class action.

Alsheref's petition opaquely asserts that he may be subject to harm if he is removed to Israel, citing regulatory limits on third-country removal and accusations of Israeli mistreatment of persons of Palestinian descent without explicitly listing it as a claim for relief. Dkt. No. 1 at 9–10. The argument is made more clearly in his now-withdrawn motion for a TRO and preliminary injunction, where he urged that a "TRO is warranted because an attempted removal to Israel would violate [his] statutory right to seek withholding of removal." Dkt. No. 3 at 8 (emphasis deleted).

As noted by the respondents, Dkt. No. 18 at 18, Alsheref's pending third-country removal qualifies him as a member of the non-opt-out class certified by the District of Massachusetts. He is a class member because Israel was neither his listed country of removal nor has it been "identified in writing in the prior proceedings." *D.V.D.*, 778 F. Supp. at 378. The District of Massachusetts enjoined the class members' removal absent

specified procedural protections. 778 F. Supp. 3d at 392–93. And although the Supreme Court stayed that order, 145 S. Ct. at 2153, the preliminary injunction and related subsequent orders are currently on appeal to the United States Court of Appeals for the First Circuit, and the class members' claims are pending in the district court.

Tellingly, Alsheref does not attempt to argue otherwise, abandoning his motion for a TRO and preliminary injunction and instead emphasizing that "[i]t is virtually impossible" that Palestinians born abroad like himself could be removed to the West Bank, Gaza, or Israel. *See* Dkt. No. 20 at 7. But this change in litigation strategy does not withdraw the class's coverage. Since he is in detention awaiting removal to a third country and was detained after February 5, 2025, he is a member of the class. *See Nasrabadi*, No. 1:25-CV-129, Dkt. No. 16 at 6–8. As a class member, he is "barred from pursuing his own individual lawsuit that seeks equitable relief within the subject matter of the class action." *Id.* at 7 (quoting *Green v. McKaskle*, 770 F.2d 445, 447 (5th Cir. 1985)).

To the extent Alsheref objects to removal to Israel for failing to have an opportunity to protest his removal on withholding-of-removal grounds, the proper forum for his claim is the District of Massachusetts. The Court thus denies the remainder of Alsheref's habeas petition.

### D.    A hearing is not necessary.

"When the district court has sufficient facts before it to make an informed decision on the merits of the habeas petitioner's claim, it does not abuse its discretion in failing to conduct an evidentiary hearing." *Gallegos v. Quarterman*, 265 F. App'x 300, 303 (5th Cir. 2008) (citation modified). An evidentiary hearing is required only when the federal court

lacks sufficient undisputed facts to make an informed decision. *Barrientes v. Johnson,* 221 F.3d 741, 770 (5th Cir. 2000). As the analysis above shows, no hearing is necessary here.

First, the dispute regarding the INA and the Fifth Amendment does not warrant a hearing. As explained above, assuming that the respondents failed to abide by the procedural requirements of the INA, any error was harmless. And even if it were harmful error, a writ of habeas corpus ordering his release would not be the appropriate remedy. In addition, "[t]he Court must give appropriate deference" to the respondents' expanded ability to remove Alsheref in light of its undisputed power to conduct third-country removals, as well as the respondents' renewed attempts to seek removal to Israel. *See Nguyen*, 2025 WL 2737803, at *12. The Court thus does not find a hearing necessary to determine whether changed circumstances make Alsheref's removal significantly likely in the reasonably foreseeable future.

Second, Alsheref's constitutional argument does not warrant a hearing for essentially the same reasons. One is not necessary to determine whether there is a significant likelihood that changed circumstances have led Alsheref's removal to be likely in the reasonably foreseeable future. Even without applying the presumption in *Zadvydas*, there is no due-process violation present today because he is being held for imminent removal. No evidence or argument at a hearing would change this result.

Last, an evidentiary hearing is inappropriate for Alsheref's fear-of-harm claim because it belongs in the *D.V.D.* class action. The Court thus concludes that no hearing is necessary to resolve this dispute and resolves the case now on the briefing and evidence in the present record.

**4.    Conclusion**

The Court denies Alsheref's petition for a writ of habeas corpus (Dkt. No. 1).  His complaint for declaratory and injunctive relief is denied as moot.  *Id.*  His withdrawn motion for a temporary restraining order and preliminary injunction (Dkt. No. 3) is denied as moot.

So ordered on December 3, 2025.

                                            JAMES WESLEY HENDRIX
                                            UNITED STATES DISTRICT JUDGE